**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| VICTOR MANUEL GARCIA-SANCHEZ, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN ACUNA, Acting Field Office | ) | No. 25-cv-03115-SHL-tmp |
| Director of Immigration and Customs | ) | |
| Enforcement, New Orleans Field Office, et | ) | |
| al., | ) | |
| | ) | |
|     Respondents. | ) | |

## ORDER GRANTING PETITION

On December 9, 2025, Petitioner Victor Manuel Garcia-Sanchez filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a "meaningful bond hearing before an impartial adjudicator within a reasonable time."  (ECF No. 1 at PageID 7.)  The Court ordered Garcia-Sanchez to provide supplemental facts and serve Respondents, and for Respondents to file a response in writing.  (ECF No. 6.)  Garcia-Sanchez did so, (ECF No. 8), and Respondents filed their response four days later.  (ECF No. 10.)  Garcia-Sanchez replied on December 20.  (ECF No. 11.)  For the reasons explained below, Garcia-Sanchez is entitled to a bond hearing before an immigration judge ("IJ"), and the Petition is **GRANTED**.

## BACKGROUND

Garcia-Sanchez is a thirty-four-year-old citizen of Nicaragua who unlawfully entered the United States "[o]n or about December 12, 2022" near El Paso, Texas.  (ECF Nos. 8 at PageID 27; 10 at PageID 39.)  Garcia-Sanchez was thirty-one years old at the time of entry.  (ECF No. 10 at PageID 39.)  Shortly after entry, "he was apprehended approximately one mile east of the Paso Del Norte Port of Entry."  (ECF No. 8 at PageID 27.)  The Department of Homeland

Security ("DHS") then "issued an I-94 'Arrival-Departure Record' form" which declared that

Garcia-Sanchez had parolee status in the United States until February 13, 2023.  (ECF No. 8 at

PageID 27–28); see Form I-94, Arrival/Departure Record, Information for Completing USCIS

Forms, United States Citizenship and Immigration Services, https://www.uscis.gov/forms/all-

forms/form-i-94-arrivaldeparture-record-information-for-completing-uscis-forms (last updated

Nov. 18, 2020).  He has remained in the United States since entry and lived, for a duration

unknown to the Court, at an address in Lilburn, Georgia.  (ECF No. 8 at PageID 28.)

On February 22, 2025, Garcia-Sanchez filed a Form I-589 Application for Asylum and

for Withholding of Removal with United States Citizenship and Immigration Services

("USCIS").  (ECF No. 8 at PageID 28.)  USCIS accepted his application, and he completed

biometrics in March 2025.  (Id.)

Later, in November 2025, DHS served Garcia-Sanchez with a Notice to Appear, charging

him with being subject to removal proceedings because he is (1) "an alien present in the United

States without being admitted or paroled," or "arrived . . . at any time or place other than as

designated by the Attorney General," and (2) an immigrant "not in possession of a valid

unexpired immigrant visa, reentry permit, border crossing card, . . . other valid entry document . .

. valid unexpired passport, or other suitable travel document, or document of identity and

nationality as required under the regulations issued by the Attorney General under section 211(a)

of the Act."  (ECF No. 10-1 at PageID 50.)  The Notice ordered Garcia-Sanchez to appear at the

West Tennessee Detention Facility on November 28, 2025, to show "why [he] should not be

removed from the United States."  (ECF No. 10-1 at PageID 47.)  Although the filings do not

specify how Garcia-Sanchez was detained, he either reported to the West Tennessee Detention

Facility or was arrested elsewhere by ICE, and remains in custody at West Tennessee Detention

Facility.  The present Petition followed, the crux of which is Respondents' denial of a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Garcia-Sanchez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the Immigration and Nationality Act ("INA") and was allegedly declared ineligible to be released on bond.

This determination is consistent with other positions taken by DHS, ICE, and Immigration Courts in cases in this District and others.  See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 11 (W.D. Tenn. Dec. 1, 2025); Camacho-Cruz v. Acuna, No. 25-cv-03035, ECF No. 1 (W.D. Tenn. Nov. 12, 2025); Torrealba v. U.S. Dep't of Homeland Sec., No. 25CV01621, 2025 U.S. Dist. LEXIS 164153, at *5–8 (N.D. Ohio Aug. 25, 2025) (discussing how an IJ declared that they lacked jurisdiction to release a petitioner on bond at her bond hearing).  However, until recently, most immigrants in these situations were given bond hearings.  (ECF No. 1-3 at PageID 14–15.)  Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons.  (Id. at PageID 16.)  For example, § 1226(c) prohibits releasing those with certain criminal records on bond, and § 1225 precludes a bond for all "applicants for admission." "Applicants for admission" has, for decades, been interpreted to include those who have not been "physically present in the United States continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a). Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."). The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission." (Id.) And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A). (Id.) Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status. As a result, all undocumented immigrants awaiting removal are detained without a bond hearing. This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025). (ECF No. 1 at PageID 12–13, 16.)

Garcia-Sanchez, who has lived continuously in the United States for more than two years, faces the risk of continued detention without a bond hearing. His Petition alleges Due Process violations under the Fifth Amendment and unreasonable seizure under the Fourth Amendment. (ECF No. 1 at PageID 6–7.) He seeks a writ of habeas corpus ordering immediate release on "reasonable bond or parole;" provision of "a meaningful bond hearing before an impartial adjudicator within a reasonable time;" a declaration that his indefinite detention "without a bond hearing is unlawful and violates due process;" and/or an award of his costs and attorney's fees under the Equal Access to Justice Act ("EAJA"). (Id. at PageID 7.) Respondents contend that

Garcia-Sanchez failed to exhaust his administrative claims and that he is not entitled to relief.
(ECF No. 10 at PageID 40–43.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or
laws or treaties of the United States.'" Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL
2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Garcia-Sanchez
challenges his detention without bond as violative of his constitutional rights.  (ECF No. 1-3 at
PageID 12.)  The Court first considers the threshold question of whether Garcia-Sanchez should
be required to exhaust his administrative remedies.  Then, the statutes are construed to determine
whether §1225 or § 1226 is applicable.  A due process analysis follows.  Finally, Garcia-
Sanchez's request for attorney's fees is briefly reviewed.

## I.      Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner
must pursue relief through those administrative processes before seeking habeas relief.
McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative
exhaustion, "sound judicial discretion governs."  Id.  Thus, the doctrine of prudential exhaustion
holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse
to hear habeas petitions that challenge bond determinations until a petitioner exhausts available
administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously applied
this doctrine to dismiss petitions for lack of jurisdiction.  See Rabi v. Sessions, No. 18-3249,
2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018).  In the context of immigrant
detention, some district courts require detained immigrants to exhaust their administrative
remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the

courts will review their habeas petitions.  E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S.

Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner

claims.  Courts have reached these conclusions when (1) "the legal question is fit for resolution

and delay means hardship, or (2) exhaustion would prove futile."  Shalala v. Ill. Council on Long

Term Care, 529 U.S. 1, 13 (2000) (internal quotations and citations omitted).

An issue is fit for judicial resolution when it presents a purely legal question.  Contreras-

Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21,

2025) (citing Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024)).  Further, when

administrative procedures involve "an indefinite or unreasonable timeline," such delays result in

hardship.  Id.  If there is a risk of extended, "potentially unlawful detention" during such delay,

then exhaustion is excused.  Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has

predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not

eligible for the relief sought."  Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S.

Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Garcia-Sanchez argues that an exhaustion requirement should not be enforced here

because 28 U.S.C. § 2241 lacks an exhaustion rule and, regardless, exhaustion would be futile.

(ECF No. 11 at PageID 51–52.)  He contends that the Sixth Circuit only treats exhaustion in

cases like this as prudential, so this Court should use its discretion to waive exhaustion.  (Id. at

PageID 52.)  He also argues that exhaustion would be futile given the 2025 decision in In re

Yajure Hurtado that IJs lack jurisdiction to preside over bond hearings.  (ECF No. 11 at PageID

52.)  Further, he highlights that his claim is "a pure legal question," that is, "the proper statutory

6

basis for detention and the constitutional minimum process required."  (Id.)  Finally, Garcia-Sanchez asserts that requiring exhaustion here would directly contradict prior decisions of this Court in similar § 2241 petitions.  (Id. (citing Godinez-Lopez v. Ladwig, No. 25-cv-02962 at ECF No. 20 (W.D. Tenn. Oct. 31, 2025)).)

Respondents argue that the Court should dismiss the Petition based on prudential exhaustion, as Garcia-Sanchez has not appealed to the BIA and received an adverse decision. (ECF No. 10 at PageID 41.)  They acknowledge that the Sixth Circuit has not yet required exhaustion in these circumstances, but urge the Court to follow the decisions in Villalta, 2025 U.S. Dist. LEXIS 169688, and other Northern District of Ohio cases, which require exhaustion based partly on the fact that "Congress has provided a robust administrative hearing and appeal process for foreign nationals in removal proceedings that include[s] evidentiary hearings, motion practice and appeals."  (ECF No. 10 at PageID 42 (quotation modified) (first citing 8 U.S.C. § 1229a; and then citing 8 C.F.R. § 236.1(d)(3)) (relying on Leonardo v. Crawford, 646 F.3d 1157 (9th Cir. 2011), which the Northern District of Ohio adopted in its decisions).)  According to Respondents, requiring exhaustion will "reduce the number of similar cases" before this Court, while acknowledging that Garcia-Sanchez "may be unlikely to obtain the relief he seeks through the administrative process based on In re Yajure Hurtado, which binds the agency and the immigration courts and rejects [Garcia-Sanchez's] arguments in this case."  (Id.)

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody.  Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement.  And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these cases.  See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025).  Therefore, exhaustion may only be required here based on "sound judicial

7

discretion." <u>McCarthy</u>, 503 U.S. at 144.  But, exhaustion may be excused if "the legal question is fit for resolution and delay means hardship, or exhaustion would prove futile."  <u>Shalala</u>, 529 U.S. at 13.

Although applying prudential exhaustion here to deny the Petition may reduce the number of these cases before the Court, Garcia-Sanchez's failure to exhaust is excused.  First, the question he poses in the Petition is fit for resolution and undue delay would impose hardship on him.  The Parties do not dispute any facts.  (<u>See</u> ECF Nos. 8 at PageID 27; 10 at PageID 39.) Thus, deciding which statute applies to Garcia-Sanchez's detention is a purely legal question, "which is right in a federal court's wheelhouse."  <u>Contreras-Lomeli</u>, 2025 U.S. Dist. LEXIS 207162, at *8.  Further, if Garcia-Sanchez is required to pursue an appeal with the BIA, his appeal process would likely take six months or more.  <u>See id.</u> (citing <u>Pizarro Reyes v. Raycraft</u>, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)).  Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy.  <u>Reyes</u>, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted).  Therefore, denying Garcia-Sanchez the chance to have a bond hearing merely because he did not appeal to the BIA[1] may force him "to endure six months or more of potentially unlawful detention and thus would cause him great hardship."  <u>Contreras-Lomeli</u>, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here.  The BIA stated in <u>In re Yajure Hurtado</u> that § 1225(b)(2)(A) applies to detained illegal immigrants who "have been residing in the United States for years."  <u>Yajure Hurtado</u>, 29 I. & N. Dec. at 220–21.  In fact, Respondents concede that <u>In re Yajure Hurtado</u> binds lower

---

[1] No evidence before the Court shows that Garcia-Sanchez has received an appealable decision from the immigration court.  Thus, the risk of undue delay is even greater here than in cases where, for instance, an IJ held a bond hearing and denied bond.

immigration courts and that Garcia-Sanchez would be unlikely to obtain relief on appeal.  (ECF No. 10 at PageID 42.)  Thus, any appeal would be futile, and exhaustion is excused.[2]

## II.    Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant."  Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'"  Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens").  Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>            . . .
>      (2)    Inspection of other aliens
>            (A)    In general
>                  Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

---

[2] Given that exhaustion is waived, Garcia-Sanchez's additional arguments about exhaustion need not be considered.  See Sharpe v. Comm'r of Soc. Sec., NO. 20-CV-02732, 2022 U.S. Dist. LEXIS 106311, at *30 n.5 (N.D. Ohio Apr. 1, 2022) (collecting cases where courts in the Sixth Circuit declined to address alternative arguments in the interest of judicial economy).

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen

"present in the United States who has not been admitted."  8 U.S.C. § 1225(a)(1).  Under this

section, all applicants for admission "shall be detained."  Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in

relevant part:

> (a)     Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and
> detained pending a decision on whether the alien is to be removed from the
> United States.  Except as provided in subsection (c) and pending such
> decision, the Attorney General—
> (1)     may continue to detain the arrested alien; and
> (2)     may release the alien on—
>     (A)     bond of at least $1,500 with security approved by, and
>     containing conditions prescribed by, the Attorney General .
>     . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a

noncitizen found to be inadmissible, who also,

> is charged with, is arrested for, is convicted of, admits having committed, or admits
> committing acts which constitute the essential elements of any burglary, theft,
> larceny, shoplifting, or assault of a law enforcement officer offense, or any crime
> that results in death or serious bodily injury to another person . . . .

Id. § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a

custody redetermination (i.e., a bond hearing) before an IJ."  Lopez-Campos, 2025 WL 2496379,

at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there

is a risk of nonappearance or danger to the community."  Id. (citing Guerra, 24 I. & N. Dec. 37,

40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses,

§ 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[3]

Garcia-Sanchez argues that ICE's new interpretation of § 1225(b)(2)(A) violates due process under the Fifth Amendment and his Fourth Amendment rights.  (ECF No. 1-3 at PageID 14.)  Further, he asserts that ICE's interpretation "deviates from established circuit precedent," and causes "prolonged detention in often harsh conditions."  (Id. at PageID 14, 17.)  He argues that 8 U.S.C. § 1226(a) applies to his detention because he has remained in the United States for years, and was not detained at the border as an "arriving alien."  (Id. at PageID 13, 15–16; ECF No. 11 at PageID 54 (emphasizing that Garcia-Sanchez should not be treated as an "'arriving alien' forever stopped at the border" because he has resided in the country for years, obtained parole status, and underwent § 1229a removal proceedings).)  As a result, he argues, Respondents' pursuit of his detention under § 1225 is arbitrary.  For instance, he asserts that Respondents' interpretation of the statutes "perversely treats" immigrants who entered the United States unlawfully, "but remained undetected for years," worse than already admitted "removable aliens" who receive bond hearings.  (ECF No. 1-3 at PageID 16.)  For these reasons, he seeks immediate release or, at least, a bond hearing before an IJ.

Respondents argue that § 1225(b)(2)(A), not § 1226(a), applies to Garcia-Sanchez because he "entered [the United States] without inspection or parole" and thus "remains an applicant for admission who is treated, for constitutional purposes, as if stopped at the border."

---

[3] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

(ECF No. 10 at PageID 43.)  As a result, they assert "he is subject to mandatory detention and not entitled to a bond hearing."  (Id.)  They incorporate by reference their statutory arguments from Godinez-Lopez.  (Id. at PageID 43–44.)  In addition, they assert that, since the October hearing in Godinez-Lopez, they learned of cases from the Western District of Louisiana, the Eastern District of Wisconsin, the Northern District of Texas, and the Eastern District of California in which the courts "sided with the Government," and that this Court should do the same.  (Id. at PageID 44 (collecting cases).)

Finally, Respondents argue that, if the Court decides that § 1226 applies to Garcia-Sanchez, a bond hearing should be ordered instead of immediate release.  (Id. at PageID 45.)  They emphasize that immediate release would be inappropriate because the immigration court must determine whether Garcia-Sanchez poses "a flight risk or a danger to the community."  (Id.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondents' contention that Garcia-Sanchez is an "applicant for admission."  Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The title of § 1226(a) is "Apprehension and detention of aliens."  Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute."  Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified).  Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings.  But Garcia-Sanchez was not "arriving" when he was detained far away from El Paso in Tennessee, after having been in this country for more than two years.  (ECF No. 8 at PageID 28.)  Also, the record does not show that he was eligible for expedited removal proceedings.  Thus, the mandatory detention provision of § 1225 does not apply to him.

Relatedly, the subject matter of § 1225 undercuts Respondents' reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border.  See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."). Section 1225 explicitly applies to "an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ."  8 U.S.C. § 1225(b)(1)(A)(iii)(II).  It does violence to the statute to argue that § 1225 applies to Garcia-Sanchez, who has been physically present in the United States continuously for over two years, and who is not actively crossing the border.

Further, Respondents' reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself.  "If possible, every word and every provision is to be given effect." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). But to apply § 1225(b)(2)(A) to Garcia-Sanchez would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The record does not show that Garcia-Sanchez was seeking admission at the time of his detention, and nor does it show that he had received a determination by an immigration officer that he was "not clearly and beyond a doubt entitled to be admitted."  (ECF No. ECF 8 at PageID 28–29.)  Although he apparently had a pending asylum application in 2025, that application was being processed in Bartlett, Tennessee, not at a

13

border facility. (ECF No. 8-5 at PageID 35.) The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for almost three years. To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Respondents, is untenable.

Also, Respondents' interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous. That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond. Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained. 8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . ."). But, under Respondents' reading of § 1225, all arrested noncitizens must be detained without bond. Thus, § 1226(c) would have no purpose. Yet, courts must "give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001). Garcia-Sanchez's reading of the statute is the only one compatible with the presence of § 1226(c). What is more, Garcia-Sanchez has no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to him. See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Garcia-Sanchez's situation. That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Garcia-Sanchez was

charged with being removable and detained in west Tennessee.  Thus, the Attorney General has

discretion under this section.  She "may continue to detain [him]" or she "may release [him] on

bond."  (Id.)  But the Attorney General may not deny him the bond hearing to which he is

entitled.  See 8 C.F.R. § 1236.1(c)(8), (d)(1).

  Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in

Garcia-Sanchez's favor, but the Congressional intent behind § 1226(a) is also supportive.  In

2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude

persons with criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).

Congress would not have added exceptions to the broad rule of § 1226(a) if, as Respondents

assert, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove

Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress

has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.

In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to

its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2)

already mandated detention of any alien who has not been admitted, regardless of how long they

have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless."  Lopez-

Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL

237441, *12 (D. Minn. Aug. 15, 2025)).

  Given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal

immigrant who has been continuously present in the United States for over two years is governed

by § 1226(a), and is subject to the discretionary bond process in that provision.

### III.    Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)."  Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)).  In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

The Parties agree that, if a due process violation is found here, the appropriate remedy is a prompt, meaningful bond hearing before an IJ, not immediate release.  (ECF Nos. 10 at PageID 45; 11 at PageID 54.)  However, Garcia-Sanchez seeks to preserve a request for release if he is denied a bond hearing "within a reasonable time."  (ECF No. 11 at PageID 54.)

Here, because § 1226(a) applies to Garcia-Sanchez, he is owed the process given to him under that statute.  As to the Mathews factors, (1) Garcia-Sanchez has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Garcia-Sanchez's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention.  Indeed, before he was apprehended, Garcia-Sanchez had resided in Georgia, was present in the United States for several years, and had begun the asylum application process.  These facts indicate his ties to the

United States, his desire to remain, and his expectation that he would remain free from government custody. Also, he was not otherwise incarcerated when ICE detained him. As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside. Thus, Garcia-Sanchez is entitled to a bond hearing before an IJ. Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violated his due process rights.

Thus, consistent with the Court's decisions in Godinez-Lopez and Castaneda-Mondragon, and after consideration of the record, Garcia-Sanchez's petition is **GRANTED**. He is entitled to a bond hearing in an immigration court within a reasonable time.

## IV.    Attorney's Fees and Costs

Although not argued in detail in the briefs, Garcia-Sanchez seeks attorney's fees and costs under the EAJA, 28 U.S.C. § 2412. (ECF No. 1 at PageID 7.) That provision allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ." 28 U.S.C. § 2412(b). "A claim for attorney's fees and related nontaxable expenses must be made by motion . . . ." Fed. R. Civ. P. 54(d)(2)(A). "In addition to the requirements of Fed. R. Civ. P. 54(d)(2)," the Court's Local Rules impose supplemental requirements on motions for attorney's fees and costs, including but not limited to affidavits of counsel of record and another attorney in the community. See Loc. R. 54.1(b).

However, 28 U.S.C. § 2412(d)(1)(B) states that a motion for attorney's fees is due "within 30 days of final judgment." Under the EAJA, a "final judgment" is a judgment that is final and not appealable; here, that time occurs sixty days after the judgment, as that is the deadline for appeal. Melkonyan v. Sullivan, 501 U.S. 89, 96 (1991). Therefore, a motion for

17

costs and attorney's fees ripens ninety days after judgment here, and should not be considered earlier.  See Castaneda-Mondragon, 25-cv-03044-SHL-tmp at ECF No. 15 (W.D. Tenn. Jan. 5, 2026).

Therefore, in accordance with 28 U.S.C. § 2412(d)(1), Federal Rule 54(d), and Local Rule 54.1, the request in the Petition for an award of attorney's fees and costs is held in abeyance until **ninety days after** the entry of final judgment.  If Garcia-Sanchez still seeks attorney's fees and costs, he must file a motion with supporting affidavits in accordance with Local Rule 54.1(b) by the above ninety-day deadline.

## **CONCLUSION**

For the reasons stated above, the petition is **GRANTED**.  Respondents are **ENJOINED** from pursuing Garcia-Sanchez's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondents are further **ORDERED** to provide Garcia-Sanchez with a bond hearing before an immigration judge under 8 U.S.C. § 1226(a) within **seven days** of the entry of this Order or otherwise release him.

**IT IS SO ORDERED,** this 13th day of January, 2026.

s/ Sheryl H. Lipman_____
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE